UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WAYLON WOOD                          CIVIL ACTION NO. 17-1630

VERSUS                               JUDGE S. MAURICE HICKS, JR.

KANSAS CITY SOUTHERN                 MAGISTRATE JUDGE HORNSBY
RAILWAY CO

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 38) filed by Defendant, The Kansas City Railway Company ("KCSR"). Plaintiff, Waylon Wood ("Wood"), has sued KCSR for alleged discrimination, retaliation, and interference against him based on Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act of 1993 ("FMLA"). KCSR seeks summary judgment dismissing all of Wood's claims. Wood filed an opposition to the motion. See Record Document 51. KCSR replied. See Record Document 52. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**, and all of Wood's claims are **DISMISSED WITH PREJUDICE**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises out of an employment relationship between Wood and KCSR. Wood has been continuously employed by KCSR since April 18, 2011, when he was hired on as an Assistant Signalman to work on one of KCSR's signal gangs. See Record Document 51-1 at 1. A signal gang's primary responsibility is to install signal equipment in the company's ten-state freight railroad operating area. See id. Signal gangs work system wide, and any gang may be assigned to travel and work anywhere in the system.

See id. at 2. Travel is thus required for all signal gang employees, regardless of position. See id. Wood is a current union employee of KCSR but has been on Medical Leave of Absence ("MLOA") for six years as of the filing of the instant motion. See Record Document 38 at 1.

KCSR states that Wood was held out of service from August 2014 to October 2015 due to an alleged concern related to Wood's use of narcotic pain medication while working in a safety-sensitive position that required work on and around live track equipment. See Record Document 51-2 at 2. Wood states that he was held out of service because he was regarded as disabled due to his use of prescribed medications which he had disclosed to KCSR. See id.

On or about May 27, 2015, Wood filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging, among other things, disability discrimination under the ADA, as he had disclosed his use of the medication throughout the course of his employment with KCSR. See id. at 3. The matter was resolved. See Record Document 38-1 at 2; see also Exhibit 7. Wood returned to work in October 2015 without a lapse in his employment. See Record Document 38-1 at 2. Wood bid on a foreman position in, and as the most senior bidder, he was placed in the foreman position on October 15, 2015. See Record Document 51-1 at 4. Rates of pay for signal-gang foreman and Signalman positions are governed by the terms of the Collective Bargaining Agreement ("CBA") that KCSR has with the Union. See id. Under the CBA, foremen work in a salaried position, and Signalmen work in an hourly position. See id.

Following his return to work, Wood alleges that he experienced retaliatory conduct, including the following: being "cussed out" daily by his supervisor; being disqualified as a

crane operator and backhoe operator "for no reason at all;" having his position converted to an hourly rate; being assigned jobs as far as possible from his home; and being demoted from foreman to signalman. See Record Document 51-3 at 3–4.

KCSR asserts that when Wood returned to work in October of 2015, he did not present his certification card to Manager of Signal Engineering, Billy Steiner ("Steiner"). See Record Document 51-1 at 5. KCSR states that Wood explained to Steiner that he did not have his old card and requested that Steiner sign a new certification card. See id. at 6. Steiner asserts that he was not aware of whether Wood's certifications were current or of the specific equipment Wood had been certified to operate. See id. Wood states that he was always certified to operate the equipment necessary for his job. See id. At that time, KCSR managers were no longer permitted to "sign off" on an employee's equipment qualification; instead, employees had to be certified by formal, periodic training conducted by a training specialist for KCSR. See id. Wood asserts that it was customary for managers to sign off on an employee's equipment qualifications prior to this incident. See id. at 7. Wood did not attend the January training session in Shreveport to obtain any needed equipment certifications, but he did attend a training session in February 2016 and received his equipment certification at the end of training. See id.

KCSR also responds to Wood's allegation that he was demoted from foreman to signalman. In December of 2015, KCSR operated five signal gangs. See id. at 9. KCSR states that by December of 2015, the KCSR signal gangs had fewer work projects due to both the company's completion all federally required positive train control ("PTC") installations on its rail line and its commitments to certain non-signal related capital requirements. See id. Wood contests that there were fewer work projects. See id. at 9–

3

10. He states that KCSR allowed a foreman to continue to bid for the fifth gang, which demonstrates the need for a fifth gang. See id. at 10; see also Record Document 51-3 at 4. Due to the reduced number of projects, discussions began among management to restructure the Signal Department and, specifically, to consolidate the signal gangs from five to four and add positions to each of the four remaining gangs to optimize efficiency. See id. at 9–10. The choice was made to consolidate Gang 890's positions into the other four gangs because Gang 890 was already down a signal foreman, meaning that its consolidation would result in overall less disruption to the signal gang workforce. See id. at 10. The restructuring decision for the Signal Department became final on January 8, 2016, and took effect on January 28, 2016. See id. at 11.

Wood testified that he did not know why KCSR management decided to reduce from five signal gangs down to four. See id. Wood asserts that he has provided evidence that the reduction was not necessary and that it had a retaliatory effect on him as it reduced him from a salary position to an hourly position. See id. at 11-12. KCSR asserts that Wood was not able to hold a foreman position in another gang because he did not have seniority to bump any of the other foreman. See id. at 13. Wood states that although he did not have seniority, he has provided evidence that a reduction was not necessary and that it had a retaliatory effect on him. See id.

Wood worked in a foreman position and received foreman pay from October 15, 2015, through Thursday, January 28, 2016, though he remained in the system as a Foreman through January 31, 2016. See id. at 17. Wood began receiving signalman pay on February 1, 2016. See id. Wood asserts that he did not receive foreman pay for his last week of working as a foreman. See id.

At the time of the following discussed events in 2016, APS Healthcare ("APS")—which has since changed its name to "KEPRO"—was the third-party vendor that KCSR had contracted with to oversee and administer the management of employee FMLA and MLOA leave processes. See id. In 2016, APS made independent FMLA and MLOA leave determinations and continues to make such determinations at this time, although KCSR is notified contemporaneously of all employee leave requests and determinations and maintains records of the same. See id. at 18. On January 29, 2016, Wood contacted APS via telephone and requested FMLA leave. See id. KCSR states that because Wood had not worked the requisite number of hours in the prior rolling 12-month period, he was not eligible for FMLA leave. See id. Wood states that because of the Settlement Agreement reached for his first EEOC charge, he returned to work without a lapse in service, was given back pay, and was entitled to paid vacation in November 2015, as there had been no lapse in service, per the CBA. See id. at 18–19; see also Record Document 51-2 at 27. Wood was notified that he was not eligible for FMLA on January 29, 2016. See id. at 19.

On January 29, 2016, APS notified Wood that he could apply for a MLOA and was instructed to submit such a request to APS. See id. APS sent the MLOA paperwork to Wood on January 29, 2016, via email, identifying a deadline of February 13, 2016, to complete and submit the medical certification paperwork. See id. Wood was "preliminarily approved" for MLOA on January 29, 2016, pending receipt of medical certification to support his placement on medical leave. See id. at 20. Wood contacted APS on February 4, 2016, via telephone stating that he did not receive the MLOA paperwork, at which point APS again sent the required paperwork via email to Wood and identified an extended

submission deadline of February 19, 2016. See id. Wood states that he never received any paperwork in January or February of 2016. See id.

On February 12, 2016, Wood signed a Charge of Discrimination that was received by the EEOC on March 15, 2016. See id. at 20. Wood contests this date and asserts that he filed his "Second Charge" of Discrimination on April 12. See id. On February 24, 2016, Wood was notified by APS via email that his requested MLOA was denied because the submission deadline had passed without a response. See id. at 21. Wood states that although he was notified that he was denied his requested MLOA, no reason was given. See id. Wood requested, and Steiner approved, a request for vacation leave on March 8 through March 10 and March 17 through March 18, 2016. See id. The vacation was "unpaid" because Wood did not work enough days in 2015 to qualify for paid vacation in 2016. See id. Wood states that there was no lapse in his employment because of the EEOC settlement. See id.; see also Record Document 51-3 at 3. Wood was notified that the leave would be "unpaid" prior to his taking the leave. See id. at 22. On or about March 28, 2016, Wood reported an on-duty injury and was placed on a MLOA. See id. Medical certification paperwork was emailed to Wood on March 28, 2016, with a submission deadline of April 12, 2016. See id. Wood has not returned to work since March 28, 2016, and he states that it is because he has not been allowed to return from work despite providing KCSR with Fitness for Duty and Release to Return to Work Forms. See id.

Like FMLA, under a MLOA Wood is required to keep KCSR updated on his medical status by regularly turning in a KCSR Work Status form(s). See id. at 23. Also, like FMLA, while on MLOA Wood continues his employment connection with KCSR, but does not continue to accrue months of service toward retirement. See id. EEOC closed its

investigation of Wood's 2016 charge on or about September 26, 2017, when the agency issued Wood his "Notice of Suit Rights." See id. at 25.

Wood seeks damages from KCSR under Title VII, the ADA, and the FMLA for reinstatement and/or loss of future wages, back pay and other benefits, compensatory and liquidated damages, and costs and attorney's fees. See Record Document 38-2 at 7.

## LEGAL STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). A court may consider pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits when determining whether summary judgment is appropriate. See FED. R. CIV. P. 56(c).

In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all

permissible inferences in favor of the non-moving party." Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., 719 F.3d 424, 434 (5th Cir. 2013).

## ANALYSIS

All claims in this case are analyzed using the McDonnell Douglas burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

### A. Claims under Title VII

a. Retaliation

Wood does not oppose granting KCSR's motion for summary judgment, which would dismiss his claims as it relates to retaliation under Title VII. See Record Document 51 at 1 n.1. Accordingly, KCSR's motion as to Wood's claims of retaliation under Title VII is granted, and those claims are dismissed with prejudice.

### B. Claims under ADA

a. Discrimination

"In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in McDonnell Douglas…, a Title VII case." See E.E.O.C. v. LHC Group, Inc., 773 F. 3d 688, 694 (5th Cir. 2014). The "analysis first requires the plaintiff to establish a prima facie case of discrimination." Id. To prove a prima facie case for a violation of the ADA, a plaintiff must show that (1) he is disabled or regarded as disabled within the meaning of the ADA, (2) he is qualified for the job position, and (3) he was subjected to an adverse employment action on account of his disability or perceived disability. Id. at 697.

If the plaintiff establishes his prima facie case, "'the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for its actions.'" Mueck v. La Grange Acquisitions, L.P., 75 F 4th 469, 483 (5th Cir. 2023) (quoting Thompson v. Microsoft Corp., 2 F. 4th 460, 470 (5th Cir. 2001) (citation omitted)).

If a legitimate, nondiscriminatory reason is articulated by the employer, the burden shifts back to the plaintiff "'to prove that the employer's explanation was a pretext for discrimination.'" Id. To meet this burden, the plaintiff must rebut "'each of the nondiscriminatory reasons the employer articulates.'" Id. (quoting Wallace v. Methodist Hosp. Sys., 271 F. 3d 212, 220 (5th Cir. 2001)). Specifically, the plaintiff can display "'evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" Id. (quoting Gosby v. Apache Indus. Servs., Inc., 30 F. 4th 523, 527 (5th Cir. 2022) (internal quotation marks and citation omitted)).

Here, the Court does not need to decide whether Wood established a prima facie case for discrimination under the ADA because even if he did, KCSR had a legitimate, nondiscriminatory reasoning for its decision, and Wood failed to show pretext.

Wood contends that he suffered ten adverse actions against him, which was on account of his disability or being regarded as disabled. See Record Document 51-2 at 13, 17. The ten alleged adverse actions include the following: (1) being cussed out by supervisors and threatened with termination of employment; (2) being disqualified for crane operator and backhoe operators jobs; (3) being assigned a job far from his residence; (4) being disqualified for foreman pay; (5) being demoted from foreman to signalman; (6) having his position converted from salary to hourly rate; (7) being allowed to take vacation but being denied pay; (8) being denied his right to work a specific office

job; (9) having deductions made to his pay and discontinuing his sickness benefits; and (10) being denied the right to return to work and placed on unpaid MLOA. See id. at 13.

KCSR contends that adverse actions are only regarded as those within the context of an ultimate employment decision. See Record Document 38-2 at 18. KCSR finds that only the reduction in gangs and denial of the January 2016 FMLA leave request were ultimate employment decisions. See id. Furthermore, KCSR maintains Wood has not established a causal connection between the reduction in gangs and denial of his January 2016 FMLA leave request and any actual or "regarded" disability. See id. at 19. Thus, he has not proven pretext. See id. at 20. Wood responds asserting that the ADA does not limit discriminatory actions to ultimate employment decisions. See Record Document 51-2 at 14. However, this argument is incorrect. While it is true that the Fifth Circuit has recently broadened the interpretation of what constitutes an adverse action under Title VII, this is not true for ADA claims. See Hamilton v. Dallas Cnty., 79 F. 4th 494 (5th Cir. 2023) (this case only involved claims under Title VII). Therefore, this Court will only analyze ultimate employment decisions under the ADA.

For ADA claims, the Fifth Circuits has held that "[a]dverse employment decisions are 'ultimate employment decisions such as hiring, granting leave, discharging, promoting,…compensating,' or demoting." Thompson, 2 F. 4th at 470. The two alleged adverse actions this Court considers ultimate employment decisions are: (1) being demoted from foreman to signalman and having his pay cut by $2,500, and (2) the denial of Wood's January 2016 FMLA leave request. See Record Document 38-2 at 18–19.

KCSR has asserted a legitimate, nondiscriminatory reason for its actions, as is required by Fifth Circuit case law. See Thompson, 2 F. 4th at 470. Regarding the

restricting of the signal department and Wood's demotion, Wood did not talk to any of the decision makers about this decision nor was he aware of the reasons for reducing the number of gangs. See Record Document 38-2 at 19, see also Exhibit 2 at pp. 60–61, 65. Wood was demoted because there was decrease in the number of signal gangs, and he lacked seniority. See Record Document 52-2 at 3–4. Once KCSR articulates its nondiscriminatory reason, Wood must prove that KCSR's explanation was a pretext for discrimination. See Thompson, 2 F. 4th at 470. Wood maintains that the decrease in the signal gangs was done specifically so he would lose his foreman position and be demoted. See Record Document 52-2 at 3. Wood's argument is not enough to show pretext. Wood does not understand the inner workings of KCSR or how the decision-making process works. He admitted his lack of understanding in his deposition. See Exhibit 2 at pp. 60–61, 65. Therefore, the demotion was not a pretextual action, and thus, not in violation of the ADA.

Regarding the denial of his FLMA request, KCSR contends that Wood did not qualify for FMLA leave, and he continually failed to support his request with medical documentation. See Record Document 38-2 at 19. Additionally, Wood has developed no evidence to show that APS was aware of any prior claim of disability. See id. In response, Wood states that KCSR admits that it has left him on MLOA because of his disability. See Record Document 51-2 at 18. Wood does not cite to where KCSR makes this admission. Furthermore, he cites to a quote from the concurrence of a Fifth Circuit case. See id. He does not support this allegation of pretext. Thus, this Court finds that the denial was not a pretextual action, and thus, not in violation of the ADA.

Therefore, summary judgment is granted as to the ADA discrimination claim, and this claim is dismissed with prejudice.

   b. <u>Retaliation</u>

"To establish a prima facie case of retaliation under the ADA or Title VII, a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action." <u>Feist v. La., Dept. of Justice, Office of the Atty. Gen.</u>, 730 F. 3d 450, 454 (5th Cir. 2013). The Fifth Circuit held, "'If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.'" <u>Id.</u> (quoting <u>LeMaire v. La.</u>, 480 F. 3d 388–39 (5th Cir. 2007) (internal citation omitted)). Then, "'the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation'…which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." <u>Id.</u> "[T]o avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." <u>Id.</u> (quoting <u>Long v. Eastfield College</u>, 88 F. 3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted)).

The Fifth Circuit has held that a successful ADA retaliation claim does not require a plaintiff to prove he "'suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices.'" <u>Tabatchnik v. Continental Airlines</u>, 262 Fed. Appx. 674, 676 (5th Cir. 2008) (quoting <u>Selenke v. Med. Imaging of Colo.</u>, 248 F. 3d 1249, 1264 (10th Cir. 2001)).

Even if Wood satisfies the first and second elements of his prima facie case, his claim fails under the third element. Under this element, "a plaintiff must demonstrate that the employer's decision 'was based in part on knowledge of the employee's protected activity.'" Lyons v. Katy Indep. Sch. Dist., 964 F. 3d at 305. Wood alleges several instances of retaliatory conduct. See Record Document 51-3 at 3–5. KCSR asserts that Wood has presented no evidence, other than a general denial, that the actions/decisions would not have been made were he not to have filed the EEOC charge. See Record Document 52 at 8. Moreover, Wood cannot overcome KCSR's legitimate, nondiscriminatory reasons and his admissions, lack of evidence, and related law each support the dismissal of Wood's ADA retaliation claim with prejudice. See id. Each alleged adverse action will be discussed, and the Court will explain why there is not sufficient evidence to overcome summary judgment.

First, Wood alleges he was cussed out daily by his supervisor, Donnie Parker ("Parker"), from October 2015 to February 2016. See Record Document 52-2 at 1. Wood does not provide any evidence or support for this allegation through exhibits or other documentation. Rather, he merely states the allegation in his declaration. Without further evidence, there is no causal connection between filing his EEOC claim and this alleged adverse action.

Second, Wood alleges he was disqualified as a crane operator and a backhoe operator by his other supervisor, Steiner, and was given no reasoning behind this disqualification. See id. However, Wood did not contest that KCSR requires employees operating roadway maintenance machines to carry a currently valid Machine Operator's Qualification Card. See Record Document 51-1 at 5. Furthermore, Wood testified in his

deposition that his card was null and void because it was expired. See Record Document 38-4 at 19. Thus, Wood was knowledgeable as to the reasoning behind his disqualification. The Court find this alleged action bears no connection to the EEOC claim.

Third, Wood alleges he was assigned jobs far from his home even though KCSR had work going on near his home. See Record Document 52-2 at 2. However, Wood failed to contest the fact that signal gangs work system wide, and any gang may be assigned to travel and work anywhere in the ten-state freight railroad operating area. See Record Document 51-1 at 1–2. Wood failed to provide further evidence showing KCSR's action was in retaliation. This action is consistent with his job description at the time. Therefore, the Court finds that there is no causal connection between this alleged adverse action and the EEOC claim.

Fourth, Wood alleges that when he was moved to foreman, Steiner said he did not want Wood in a foreman's position, and he should have never bid on the job. See Record Document 52-2 at 2. In Steiner's deposition, he stated that Wood acknowledged he was lacking some skills that a foreman should have and agreed that he should have stayed a signalman. See Record Document 38-8 at 4. This allegation is contested amongst the parties; however, the Court finds no causal connection between this alleged adverse action and the EECO claim. There is no evidence proving that this discussion stemmed from the EEOC complaint.

Fifth, Wood alleges in late January 2016, Parker disqualified him for foreman pay for one week. See Record Document 52-2 at 2. KCSR responds arguing that this allegation is immaterial because it was not exhausted before the EEOC. See id. It is well-settled that a plaintiff must exhaust all administrative remedies before an action can be

brought under the ADA. <u>See, e.g.</u>, <u>Dao v. Auchan Hypermarket</u>, 96 F. 3d 787, 788–89 (5th Cir.1996); 42 U.S.C. § 2000e–5(f)(1). The exhaustion requirement is satisfied when plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice. <u>See Dao</u>, 96 F. 3d at 788–89. The Fifth Circuit has held that there is no jurisdiction for a court to consider an ADA claim when the aggrieved party has not exhausted all administrative remedies. <u>See</u>, <u>Nat'l Ass'n v. City of Pub. Serv. Bd. of San Antonio</u>, 40 F. 3d 698, 711 (5th Cir.1994).

The scope of a lawsuit on an ADA claim is limited to the scope of the prior EEOC investigation and what can reasonably be expected to develop from an EEOC Claim. <u>See Randel v. U.S. Dep't of the Navy</u>, 157 F. 3d 392, 395 (5th Cir. 1998). However, the scope is not "limited to the exact charge brought to the EEOC." <u>Young v. City of Houston</u>, 906 F. 2d 177, 179 (5th Cir. 1990). The Fifth Circuit has held that courts should "construe employment discrimination charges with the 'utmost liberality,'" given that most EEOC filings are not prepared by lawyers. <u>Price v. Sw. Bell Telephone Co.</u>, 687 F. 2d 74, 78 (5th Cir. 1982). The charge must be sufficiently descriptive to put the employer on notice of the activity complained of and give the EEOC an opportunity to secure voluntary compliance. <u>See Sanchez v. Standard Brands, Inc.</u>, 431 F. 2d 455, 467 (5th Cir. 1970).

In Wood's 2016 EEOC claim, he does not list this specific grievance. Therefore, Wood did not exhaust all administrative remedies in relation to this allegation before the EEOC. Thus, this alleged adverse action fails to meet the third element of the prima facie case.

Sixth, Wood alleges that on February 4, 2016, he was demoted from Foreman to a position of Signalman. <u>See</u> Record Document 52-2 at 3. As a result, he took a pay cut

of approximately $2,500 per month. See id. Wood claims KCSR eliminated the fifth gang so he would lose his foreman position. See id. In response, KCSR asserts that Wood was not in a position to have personal knowledge of all KCSR signal gang group projects, capital commitments outside of the signal department, or the status of PTC projects. See id. The Court agrees with KCSR's argument. In his deposition, Wood testifies that he does not know the reasons why KCSR went from four to five gangs. See Record Document 38-4 at 8. As similarly stated above in the ADA discrimination claim, Wood fails to put on sufficient evidence of KCSR's discriminatory intent regarding this alleged action. Thus, Wood fails under the third element.

Seventh, Wood alleges he was allowed to take vacation but was then denied pay for that vacation. See Record Document 52-2 at 4. KCSR responds that this allegation was not exhausted before the EEOC. See id. As this Court concluded above in allegation five, Wood's failure to exhaust before the EECO is detrimental to his ADA claim of retaliation. See Dao, 96 F. 3d at 788–89; City of Pub. Serv. Bd. of San Antonio, 40 F. 3d at 711; Randel, 157 F. 3d at 395; Young, 906 F. 2d at 179; Price 687 F. 2d at 78; Sanchez 431 F. 2d at 467. Therefore, since Wood has failed to exhaust this alleged adverse action before the EEOC, he cannot bring it before this Court.

Eighth, Wood alleges he was denied the right to work a specific office job he bid on and was awarded, and he was required to work in the field instead. See Record Document 52-2 at 4. Moreover, the person who had previously held this specific job was allowed the office job. See id. KCSR responds that this declaration is immaterial as it was not exhausted before the EEOC. See id. Additionally, Wood failed to support with evidence that his position on a signal gang provided him with insight and competence to

testify on this matter. See id. As reiterated above, since Wood has failed to exhaust this alleged adverse action before the EEOC, he cannot bring it before this Court. See Dao, 96 F. 3d at 788–89; City of Pub. Serv. Bd. of San Antonio, 40 F. 3d at 711; Randel, 157 F. 3d at 395; Young, 906 F. 2d at 179; Price 687 F. 2d at 78; Sanchez 431 F. 2d at 467.

Ninth, Wood alleges that KCSR inappropriately deducted payment from his pay and did not properly report the same to the Railroad Retirement Board, causing his sickness benefits to be discontinued. See Record Document 52-2 at 5. KCSR responds that this declaration is immaterial as it was not exhausted before the EEOC. See id. Additionally, Wood does not support any claim of inappropriate decisions with evidence and did not contest the testimony of KCSR's Director of Consolidated Payroll. See id.; see also Record Document 38-5. As stated above, this Court does not have jurisdiction over an ADA retaliation claim that has not been exhausted. Therefore, Wood cannot bring this alleged adverse action before this Court. See Dao, 96 F. 3d at 788–89; City of Pub. Serv. Bd. of San Antonio, 40 F. 3d at 711; Randel, 157 F. 3d at 395; Young, 906 F. 2d at 179; Price 687 F. 2d at 78; Sanchez 431 F. 2d at 467.

Tenth, Wood alleges that on January 29, 2016, KCSR denied his request for FMLA leave, claiming he did not meet the eligibility requirements because he did not have at least one year of service or had not worked at least 2,500 hours during the last twelve months. See Record Document 52-2 at 5. Moreover, Wood contends that the settlement agreement for the 2015 EECO complaint stipulated that there was no lapse in his service. See id. KCSR argues that Wood was on sick leave for most of 2015 and did not meet the annual hourly requirement under the law. See id. Furthermore, there was no stipulation

in the settlement agreement regarding a lapse in service. Wood fully and finally settled all issues related to his placement of leave and the associated 2015 EEOC charge. See id.

This Court finds that this alleged adverse action has no causal connection with the 2016 EEOC complaint because the complaint was filed on February 12, 2016. The action occurred before the complaint was filed; thus, the denial of his FMLA cannot be in retaliation for filing the 2016 EEOC complaint.

Finally, Wood alleges that he was denied MLOA on February 24, 2016. See Record Document 52-2 at 5. As a result, Wood had to delay his back surgery. See id. at 6. KCSR contends that Wood was notified of the submission deadline for his MLOA request and his denial of MLOA by letter. See id. Additionally, Wood admits in his deposition that he received both the submission deadline and his denial. See id.; see also Record Document 38-4 at 36. Because Wood received notice and still failed to submit his request timely, this Court finds no causal connection between this alleged adverse action and his EEOC claim. Rather, he was denied MLOA because he did not meet the submission deadline.

Because Wood has failed to prove the third element as to all alleged adverse actions, the Court grants summary judgment as to his ADA retaliation claim. Further, his ADA retaliation claim is dismissed with prejudice.

c. Failure to Accommodate

KCSR argues that Wood's February 2016 EEOC charge failed to allege any facts whatsoever to support a claim for failure to accommodate. See Record Document 38-2 at 25. Wood states that while he did not specify in his second EEOC charge a "failure to accommodate," he did specifically state that he was experiencing retaliation after his

return to work and that said retaliation was a "continuing violation." <u>See</u> Record Document 51-2 at 18 n.16. He further states that while he believes that his EEOC charge clearly stated his claim and that the failure to accommodate claim could reasonably be expected to grow out of his charge of discrimination/retaliation, in an abundance of caution, he filed a third charge of discrimination/retaliation on July 11, 2022. <u>See id.</u> In reply, KCSR argues that Wood's July 2022 EEOC charge alleging the failure to accommodate claim serves as a tacit admission that such claims were not preserved for this lawsuit. <u>See</u> Record Document 52 at 3.

It is well-settled that a plaintiff must exhaust all administrative remedies before an action can be brought under the ADA. <u>See, e.g.</u>, <u>Dao</u>, 96 F. 3d at 788–89; 42 U.S.C. § 2000e–5(f)(1). The exhaustion requirement is satisfied when plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice. <u>See</u> <u>Dao</u>, 96 F. 3d at 788–89. The Fifth Circuit has held that there is no jurisdiction for a court to consider an ADA claim when the aggrieved party has not exhausted all administrative remedies. <u>See</u>, <u>City of Pub. Serv. Bd. of San Antonio</u>, 40 F. 3d 698 at 711.

The scope of a lawsuit on an ADA claim is limited to the scope of the prior EEOC investigation and what can reasonably be expected to develop from an EEOC Claim. <u>See</u> <u>Randel</u>, 157 F. 3d at 395. However, the scope is not "limited to the exact charge brought to the EEOC." <u>Young</u>, 906 F. 2d at 179. The Fifth Circuit has held that courts should "construe employment discrimination charges with the 'utmost liberality,'" given that most EEOC filings are not prepared by lawyers. <u>Price</u>, 687 F. 2d at 78. The charge must be sufficiently descriptive to put the employer on notice of the activity complained of and give

the EEOC an opportunity to secure voluntary compliance. See Sanchez, 431 F. 2d at 467.

Wood failed to exhaust his failure to accommodate claim by not including it in the charge. The 2016 formal EEOC charge does not suggest that KCSR failed to accommodate Wood's disability, it. Thus, summary judgment is granted as to the failure to accommodate claim, and the claim is dismissed with prejudice.

d. Interference

The ADA's interference provision, Section 12203(b), prohibits three categories of conduct: (1) interference "with any individual in the exercise or enjoyment of" an ADA right, (2) interference "with any individual ... on account of his or her having exercised or enjoyed" an ADA right, and (3) interference "with any individual ... on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of" an ADA right. See § 12203(b); see also Huber v. Blue Cross & Blue Shield of Fla., Inc., No. 20-3059, 2022 WL 1528564, at *5 (E.D. La. Ma 13, 2022). "The Fifth Circuit has not articulated a specific test to state an ADA interference claim." Huber, 2022 WL 1528564 at *5. However, other circuits have recognized that the Fair Housing Act ("FHA") has an analogous provision to the ADA. Id. In those cases:

> [A] plaintiff alleging an ADA interference claim must demonstrate that [he]: (1) engaged in activity statutorily protected by the ADA; or (2) engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; and (3) that the defendants coerced, threatened, intimidated, or interference on account of [his] protected activity; and (4) that the defendants were motivated by an intent to discriminate.

Id. Interference is defined as "'the act of meddling in or hampering an activity or process.'"

Id. at *6 (quoting Walker v. City of Lakewood, 272 F. 3d 1114, 1129 (9th Cir. 2001)).

Protected activities include formal complaints of discrimination or request for accommodations. Id.

Wood asserts he has proven a prima facie case of interference under the ADA. See Record Document 51-2 at 24. Wood contends that KCSR has not provided any evidence to show justification in its alleged adverse actions towards Wood. See id. at 26. Wood contests all the acts occurring prior to his placement on unpaid MLOA. See id. Wood argues that his disability or perceived disability was the motivating factor leading to the termination of his employment, and summary judgment is not appropriate. See id. KCSR responds that Wood cannot prove his prima facie case, and even if he could, he cannot overcome KCSR's legitimate nondiscriminatory reason(s) for its action. See Record Document 38 at 2.

While Wood's request for an accommodation is a protected activity under the ADA, he fails to provide sufficient evidence to show that KCSR interfered on account of his protected activity and was motivated by an intent to discriminate. The contested, alleged adverse actions that occurred prior to his placement on unpaid MLOA are listed above under the ADA retaliation claim. As explained above, Wood cannot show pretext. KCSR has provided nondiscriminatory justification for it actions, and Wood fails to prove that KCSR was motivated by an intent to discriminate. Therefore, summary judgment is granted as to the ADA interference claim, and the claim is dismissed with prejudice.

## C. Claims under FMLA

### a. Retaliation

The Fifth Circuit held in Richardson v. Monitronics Int'l, Inc., that the mixed-motive framework applies to FMLA claims in which retaliatory animus was a motivating factor in

an adverse employment action. 434 F. 3d 327, 333 (5th Cir. 2005). To escape liability under this framework, an employer must show that the retaliation was not the but-for cause of its action. Id.

Under the first step of the mixed-motive burden-shifting framework, Wood must establish a prima facie case of FMLA retaliation. To do so, Wood must show that (1) he was protected under the FMLA, (2) he suffered an adverse employment action, and (3) the adverse action was taken because he sought protection under the FMLA. Murillo v. City of Granbury, No. 22-11163, 2023 WL 6393191, at *3 (5th Cir. Oct. 2, 2023); see also Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F. 3d 574, 583 (5th Cir. 2006). The third element requires Wood to show a causal link between the protected activity under the FMLA and the alleged adverse action. Id. "If [Wood] demonstrates a prima facie case, the burden shifts to [KCSR] to present legitimate, nonretaliatory reasons for the adverse action." Id. If KCSR provides such reasons, "'the burden shifts back to [Wood] to show that those reasons are pretextual.'" Id.

KCSR argues that Wood was not protected under the FMLA because he did not work the requisite 1,250 hours in the twelve-month period preceding his FMLA leave request. See Record Document 38-2 at 20. It also states that APS repeatedly attempted to process Wood's request for medical leave from January 29, 2016, to March 28, 2016, but Wood failed to provide APS with the supporting information needed to do so. See id. at 21. Wood argues that KCSR is now equitably estopped from asserting a defense of non-coverage, as KCSR contended that Wood had "exhausted" is FMLA leave. See Record Document 51-2 at 27. KCSR then states that regardless of any reference to FMLA, Wood never alleges that he, detrimentally or otherwise, "relied" on such

representation nor could such reliance be deemed reasonable, as each correspondence makes it clear that Wood will continue to be on a MLOA. <u>See</u> Record Document 52 at 9. The Fifth Circuit has held that:

> "[A]n employer who without intent to deceive makes a definite but erroneous representation to [its] employee that [he] is an 'eligible employee' and entitled to leave under [the] FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to [his] detriment."

<u>Oncale v. CASA of Terrebonne Parish, Inc.</u>, No. 19-14760, 2020 WL 3469838, at *11 (E.D. La. June 25, 2020) (quoting <u>Minard v. ITC Deltacom Commc'ns, Inc.</u>, 447 F. 3d 352, 359 (5th Cir. 2006)). Reliance is a critical requirement of equitable estoppel, and as such, the Fifth Circuit has reiterated the Supreme Court's explanation "'that the party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to charge his position for the worse.'" <u>Harvey v. Wal-Mart La. L.L.C.</u>, 665 F. Supp. 2d 655, 673 (W.D. La. 2009) (quoting <u>Minard</u>, 447 F. 3d at 358) (quoting <u>Heckler v. Cmty. Health Servs. Of Crawford Cnty., Inc.</u>, 467 U.S. 51, 59, 104 S. Ct. 2218 (1984)). "'[R]eliance must have been reasonable in that the party claiming the estoppel did not know nor should have known that its adversary's conduct was misleading.'" <u>Id.</u>

In <u>Minard</u>, the Fifth Circuit found detrimental reliance on the part of the plaintiff because "she testified that had she known she was not eligible for FMLA leave, she would have pursued other options for her medical condition that would not have required leave." 447 F. 3d at 359. In <u>Oncale</u>, the district court found that the defendant was estopped from asserting a non-coverage defense because the plaintiff's "complaint further allege[d] that [the plaintiff] would have returned to work earlier, with certain accommodations, had she

known that she was going to lose her job before her FMLA leave expired." 2020 WL 3469838, at *12.

Here, nothing in Wood's deposition testimony nor complaint shows detrimental reliance. Wood acknowledges that he received the letter stating he was not eligible for FMLA. <u>See</u> Record Document 38-4 at 36. Furthermore, Wood testified that he has an understanding that he needed additional hours to qualify under the FMLA. <u>See id.</u> at 25–26. Even though his denial of FMLA may have delayed his back surgery, Wood does not specifically allege detrimental reliance like the plaintiffs did in <u>Minard</u> and <u>Oncale</u>.

Even if Wood's complaint or testimony could be read to sufficiently allege equitable estoppel, his allegation that KCSR violated the FMLA by denying his request for leave is insufficient to state a claim for retaliation under the FMLA. Even if Wood could prove his prima facie case, he cannot show that KCSR's reasons for denying his request were pretextual. Wood supports his pretextual argument by referring to the settlement agreement, which should not be considered by the Court at this time because it has not been properly unsealed. Therefore, summary judgment as to the FMLA retaliation claim is granted, and the claim is dismissed with prejudice.

   b. <u>Interference</u>

To establish a prima facie case of FMLA interference, a plaintiff must show: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." <u>Caldwell v. KHOU-TV</u>, 850 F. 3d 237, 245 (5th Cir. 2017); <u>see also</u> <u>Cerda v. Blue Cube Operations, L.L.C.</u>, 95 F. 4th 996, 1001 (5th Cir. 2024). Additionally, the Fifth Circuit has

held that "[a] plaintiff must also show that [he] was prejudiced by the interference." Moreau v. Caddo Parish Dist. Attorney Office, No. 18-0982, 2020 WL 1494142, at *4 (W.D. La. Mar. 26, 2020) (citing Downey v. Strain, 510 F. 3d 534, 539 (5th Cir. 2007)).

District courts have analyzed what constitutes prejudice. For example, in Jones v. Children's Hosp., the district court found that "[p]rejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing car, or suffers some loss in employment status such that equitable relief is appropriate." 58 F. Supp. 3d 656, 669 (E.D. La. 2014).

Wood claims that KCSR interfered with his attainment of rights under the FMLA by failing to give him "hours worked" credit when he returned to work in October 2015 after a 14-month absence, which presumably would have resulted in his placement on FMLA leave in January 2016. See Record Document 38-2 at 23. KCSR asserts that Wood cannot establish a prima facie case of FMLA interference because he cannot demonstrate that KCSR denied him FMLA leave or benefits to which he was entitled, and he cannot show prejudice. See id. at 23. Wood argues that it is uncontested that he gave proper notice of his intent to take FMLA leave, but to the extent that he was later granted FMLA leave and allegedly "exhausted" the same, he has been denied the benefit of restoration to his job upon his return from FMLA "exhausted" leave. See Record Document 51-2 at 29. KCSR states that Wood is required to establish each element, as estoppel does not apply. See Record Document 52 at 10.

The Court agrees that Wood must prove each element of the prima facie case because estoppel does not apply. As stated above under the FMLA retaliation claim,

Wood did not specifically allege detrimental reliance, as is required by the equitable estoppel doctrine. Thus, each element must be proven. Wood's FMLA interference claim fails because he does not sufficiently show he was prejudiced by being granted MLOA rather than FMLA. Wood claims he was entitled, under the FMLA, to be restored to his job and paid the salary he had before requesting leave. See Record Document 51-2 at 30. KCSR responds to Wood's argument, stating that his claim asserting he is entitled to job restoration at the same pay, benefits, and terms is only applicable to those returning from FMLA-protected leave, which he is not. See Record Document 52 at 10. Since Wood is not returning from FMLA-protected leave, the Court agrees that he is not entitled to job restoration.

Additionally, Wood fails to provide sufficient evidence supporting elements one and three of the prima facie case. Instead, he asserts that KCSR is estopped from contesting that the first, second, and third prongs are satisfied. See Record Document 51-2 at 29. Wood maintains he has shown he was eligible for FMLA under the terms of the settlement agreement. See id. However, KCSR correctly argues that Wood fully and finally settled the reasons for his placement on MLOA in 2015 and cannot now attempt to litigate the same before this Court. See Record Document 52 at 10. In fact, doing so is a direct violation of the settlement agreement's confidentiality and non-use provisions. See id. Therefore, summary judgment is granted as to the FMLA interference claim, and the claim is dismissed with prejudice.

**CONCLUSION**

Based on the reasons explained above,

**IT IS ORDERED** that KCSR's Motion for Summary Judgment (Record Document 38) is **GRANTED**. All of Wood's claims are thereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 3rd day of October, 2024.

UNITED STATES DISTRICT JUDGE